JAMES A. DAVENPORT, and JOHN V. DAVENPORT, Plaintiffs in Error, *v.* MARTHA D. HAYNIE, and WILLIAM D. HAYNIE, a minor, who sues by his next friend, Martha D. Haynie, Defendants in Error.

ERROR TO MARION.

Where different tenants have successively held premises, and paid rent to the wrong party, after notice, it is improper to enter a decree requiring all of these tenants, and the person to whom they paid the rent, to pay over the whole amount so wrongfully paid, to the party entitled to it.

In such case there can be no joint liability. The party who received the rent is liable for the whole amount, but each tenant is only liable for the amount which accrued during his tenancy.

THIS was a bill in chancery, filed in the Circuit Court of Marion county, by defendants in error, as complainants, against James Marshall, James A. Davenport, John V. Davenport, Thomas F. Houts, Willis D. Green, William D. Haynie, and Isham N. Haynie, defendants.

The bill states, that complainant Martha D. is mother of complainant, William D. Haynie, a minor, under fourteen years of age, who sues by her as his next friend, and that they reside in Jefferson county, Illinois; that Martha D. is widow of Abner F. Haynie, late of Marion county, deceased. That said William D. is the only surviving son and heir-at-law of said Abner F. with said Martha D.

That at August term, 1847, of Marion Circuit Court, the school commissioner of said county filed his bill in chancery against one William D. Haynie, to foreclose a mortgage on Lot 2, Block 2, Square 4, in original Town of Salem, executed by said William D. for the use of the inhabitants of Town 2, Range 2, in Marion county. Said bill, mortgage and note, are annexed to original bill, as Exhibit A.

That at said August term, 1847, of said Circuit Court, a decree was had in said cause, directing sale of said premises, and appointing Thomas F. Houts special commissioner to sell, who on May 6th, 1848, sold same to said Abner F. for $100, who gave note and mortgage as required by said decree, and

thereupon became entitled to a conveyance thereof from said Houts, whose duty it was to make such conveyance, as will appear from said decree and Houts' report, who made his final report, August term, 1848.

That from some cause, unknown to complainants, said Houts did not convey, though said Abner F. complied with the decree and orders of said court. Charges that said Abner, in law and equity, is entitled to said conveyance from Houts. That said Abner, being then in feeble health, died July 1, 1851, without getting said conveyance.

That on the 11th of June, 1851, said Abner made his last will; and, subject to his debts, which were few, and are or will soon be paid without recourse to his real estate, he, except a few legacies, bequeathed all his real and personal estate to complainants, share and share alike, and appointed defendants, Willis D. Green, W. D. Haynie, and Isham N. Haynie, his executors, who proved said will in Marion County Court.

Charges that said complainant Martha D., under said will, is entitled to one undivided moiety of said Abner's real and personal estate, and by law equally with her infant son co-complainant to said town lot No. 2, and to the rents thereof, as fully as said Abner could, and to an undisturbed title therein, and to a deed therefor.

The defendant James Marshall, said Abner's brother-in-law, taking advantage of his feeble health for years before his death, got possession of said town lot, and for three years and upwards last past has retained possession, and has rented or leased same to defendants James A. and John V. Davenport, who are in possession, though said Marshall never had any legal or equitable right thereto, and knew that he was an illegal intruder therein; that said Davenports well knew Marshall had no right thereto. That Abner, in his lifetime, in a friendly way besought Marshall to surrender possession, and complainants and others on their part since Abner's death have also so requested, but that he refused.

Charges combination of said Marshall with the Davenports to defraud her. That they have committed waste by tearing down a partition wall, which divided the store into two rooms;

and, unauthorized by complainants, since death of Abner, built another building on the premises, and since Davenports' possession it is of no use to complainants. That said Marshall and Davenports, or some of them, owe the rents of said town lot since Abner's death, to them—amount $200 and upwards, which they refuse to pay, and keep possession, committing waste from day to day without license, contrary to equity.

The oath of Marshall, James A. and John V. Davenport, T. F. Houts, W. D. Green, W. D. Haynie, and I. N. Haynie, waived. Prayer that Houts, or some other person to be authorized thereto, make complainants a conveyance of said town lot; for an account and payment by Marshall and Davenports of the rents since Marshall got possession; an injunction against waste; decree of possession, and that title be quieted; compensation for waste; and for further relief.

Answer of Thomas F. Houts, filed August 30, 1853.

Admits his appointment at August term, 1847, by Marion Circuit Court, as commissioner to sell and convey said real estate. Admits the sale, on 6th of May, 1848, of same; that James Marshall purchased for $100, who shortly afterwards directed him to make the certificate of sale to Abner F. Haynie, who was then absent.

That on Abner's return, defendant called on him, when he perfected the sale, and paid fee, etc., when Houts gave him the usual certificate of purchase.

That about the expiration of fifteen months from sale, he informed said Abner he was entitled to a deed, and would get one on surrender of said certificate. That Abner searched therefor and finally said it was lost. Submits that he (Houts) was not guilty of neglect in not executing the deed.

That after Abner's death, I. N. Haynie, one of his executors, conversed with Houts thereon, and agreed to state the matter to the court, which was not done. That Houts told him afterwards, if he got the certificate or made affidavit of loss, he would make the deed.

That such affidavit was made, and is annexed to his (Houts') answer. That said executor asked for the deed, which Houts executed and gave to William H. Green, Esq., attorney for

complainant, telling him it was worthless, being made to a dead man. That Green said it was not Houts' fault.

Affidavit of I. N. Haynie, of loss of certificate of purchase.

General replication to Houts' answer.

Answer of defendant James Marshall, filed August 30, 1853, states, that in spring of 1847, he was keeping a drug store in Salem, in his own house, when Abner F. Haynie proposed to him to enter into partnership ; that they agreed to do so. Stock estimated at $600—$300, one-half thereof, Abner was to pay. Haynie to attend to his practice as a physician ; defendant to the drug store ; and to share equally in profit and loss. That they continued in business that year. That said Haynie did not pay said $300, nor for his drugs during that year.

That in February, 1848, Haynie complained of bad health, and wished to enlarge the store or stock of drugs, and quit medical practice. That they agreed to enlarge the business, each to contribute $1,500. The house then occupied by defendant was too small, and they agreed to build a new house, which was commenced on lot 2, (the premises in dispute.) That at the time of commencing such building, Haynie had only a fictitious title from his father, W. D. Haynie, Sen., and had paid nothing for it. It was agreed that defendant and Haynie should pay said W. D. Haynie a fair price therefor, as the title could be made good by the purchase of a mortgage on said lot by said W. D. Haynie, before he conveyed to said Abner.

An account of expenses of material, etc., and labor, was kept, of which defendant paid $337.04.

That before the house was completed, said Abner was taken sick, and thereby, as he told defendant, failed in money matters ; told defendant that he loaned Black & Turner $1,000, which he could command if well. That said Abner was anxious to go to St. Louis for better medical advice, and did go. That Abner contributed about $300 or $400. That defendant went on and purchased goods on six months' time, relying on Abner's promise to contribute the balance of the $1,500. That Abner soon improved and returned home—the

money often talked of, but never paid. When the debt for the goods became due, defendant had to borrow to pay it. The defendant was displeased thereat; that he talked to Abner of dissolving the firm; that he objected; and so things went on until winter of 1849–50. Frequent talk of Abner's failure to pay, several propositions made, but no answer from Abner until defendant began making bills to himself. Abner wished to keep the stock, but defendant knew that he could not do so unless he concealed money. Defendant proposed to Abner to take the stock, pay the debts, and pay defendant fifty per cent. on his money in the stock, and he would go, or that Abner could do the same. Abner reflected, and proposed to accede, if defendant would give him his medical accounts and medicines. Defendant agreed. Abner required fifty per cent. on all medical bills paid in—defendant agreed. Then the question arose about the house. Neither wanted it. Abner said, since his health was restored, that he would attend exclusively to medical practice, and that defendant had paid nearly all expenses of building the house; that he did not like to take out what defendant paid therefor with fifty per cent. Defendant was not willing to keep the house over one year, when he intended quitting business. Abner refused to take it, and proposed to defendant to keep it at four dollars per month, one-half to Abner, the other half defendant to keep until he was repaid his outlay in building. Defendant objected to the length of time, and finally agreed, telling Haynie he would rent it out after first year. The contract was well understood between the parties, and witnesses called thereto. No dissatisfaction for eight months, until Abner and defendant were settling some old individual dealings. Then Abner expressed dissatisfaction, and proposed to the defendant to keep the house at four dollars per month and credit it on defendant's claim on house. That Abner would produce memoranda and allow certain items; otherwise he had defendant's note and would never allow them. This was their last conversation.

Denies the friendly request alleged. States that defendant called on two of the executors to settle, but could get no settlement. That defendant could not give up the house to

any one who would settle the matter. That he rented the premises to the Davenports for three years, and they occupy them.

States that the alleged waste (if any) was done by said Davenports, without defendant's consent; that they would, if desired, surrender the premises at the expiration of their tenancy in same condition as received by them.

That the entire amount expended on building was $430.89, of which said Haynie paid $93.85; the balance, $337.04, defendant paid; for which he has received nothing but the occupancy of said house by him and his tenants since May, 1850.

General replication filed to said answer.

Answer of defendant James A. Davenport, filed September term, 1853, states, that on or about March 18, 1851, he entered into partnership with B. F. Marshall, as merchants; that James Marshall, then occupying the lot in question, rented same to them for $48 a year; that they occupied same to January 17, 1854, when John V. Davenport purchased B. F. Marshall's share, and became defendant's partner. That defendant and said B. F. Marshall paid James Marshall all rent due, to time of said dissolution, at $48 per year.

That defendant and said John V. rented same from said James Marshall from thence until 1st of April, 1856, at $72 a year, and have paid him all rent due to the present time.

That shortly after said defendant and John V. took possession, they removed a partition wall which divided the store into two rooms making it inconvenient; that no damage arose therefrom, and it was removed with the intention to replace it at the end of their tenancy, if desired. That instead of waste, it rendered the store more commodious, and better fitted for business.

That they erected a shed room attached to said building as a ware or lumber room, twenty feet by fourteen feet, on which they expended $50, the store not being large enough for ordinary business; that they intend and propose to let it remain with charge, or remove it, if desired, at the end of tenancy. That it enhanced the value of the store, and was absolutely necessary.

That when defendant and B. F. Marshall rented from James Marshall, they were ignorant of his title; only knew Marshall occupied it and professed the right to rent it. That defendant and John V. when they rented were equally ignorant. Deny the charge of knowledge. That they rented in good faith and in good faith paid the rent to said James Marshall.

The answer of John V. Davenport, filed at the same time, states the same facts.

A general replication was filed on 15th September, 1853, to said answers.

Order of September 16, 1853. Suggesting resignation of defendants W. D. Haynie and I. N. Haynie as executors of will of Abner F. Haynie. Appearance of Willis D. Green, the other executor.

Answer of defendant, Willis D. Green, filed September, 1853. States, that the allegation in bill, of solvency of Abner's estate to pay debts without recourse to the realty, is true. Admits that by said Abner's will the title to said lot is in complainants, Martha D. and W. D. Haynie.

May 25, 1854. Complainants' notice to defendants Davenport, directing them not to pay rents of the premises to defendant Marshall, and notifying them, that they held said defendants responsible for the accrued rents, and that if they obtained decree of possession and Davenports should thereafter pay to Marshall any rent, they would risk refunding with costs—said Marshall having no right to the rents, complainants being lawful owners.

Sheriff's return of service of notice on defendants Davenport, by reading, on May 8, 1854.

*Thomas F. Houts*, for complainants, deposed, that he knew the parties in this cause, and the premises. That about the time of the improvements thereon, he was commissioner to sell and convey same in the cause of School Commissioner against W. D. Haynie. That James Marshall bid them off at $100, and told him to make certificate to A. F. Haynie, then absent, but who shortly returned and complied with decree of sale, and he made him the certificate. Marshall and Haynie occupied after Haynie's purchase; can't say

how long. Thinks J. A. Davenport and B. F. Marshall next occupied, who were succeeded by J. A. and J. V. Davenport for a time, and they by R. M. Nichols, who now occupies; not being familiar with rents, cannot answer as to what the premises would rent for from 1850 to present time. Rents are thirty or fifty per cent. higher now than then. Gave the certificate of purchase to Haynie, calling on Haynie for it when he was entitled to deed, who looked for it, could not find it, and said it was lost. Haynie died. I. N. Haynie, one of his executors, made an affidavit of loss, which was annexed to witness' answer; that on I. N. Haynie's request he made the deed, and gave it to W. H. Green, as attorney for complainant, telling him it was worthless, being made to a dead man.

*William D. Haynie,* for complainants, deposed, that he knew the parties to this cause. A. F. Haynie and James Marshall occupied the premises when the addition was put to it. A. F. Haynie had possession before the addition was made. Being asked, if the house were moved in the present condition, would the removal of the partition wall make it shaky and difficult to remove without injury, witness said, that the braces being taken out, it would not retain the strength it did. That as to moving, that depended on circumstances. If the movers understood moving, and replaced the braces, it could be moved without injury.

On cross-examination by defendants, said, he could not recollect where Dr. Haynie was at time of making the improvements; presumed the object in removing the partition wall was to make the store more convenient.

*John V. Davenport,* for complainants, deposed, that he knew the parties to this suit. Knows the premises; heard James Marshall say he rented them the first year for $4 per month, and since then for $6 per month. Since Marshall and Haynie dissolved partnership, B. F. Marshall and James A. Davenport occupied it part of the time, James A. Davenport and witness other part of the time, R. M. Nichols other part of the time, and up to the present time. Could not say when Marshall and Haynie dissolved partnership. James A.

Davenport and witness moved the partition; was not done by Marshall's directions, was done by witness' directions; thinks J. A. Davenport and witness told Marshall of it, who told them to do as they pleased, if they would replace the store as it was, if required.   Thinks he meant Dr. Haynie, or his executors or administrators were meant, by the party requiring to put it back.   Being asked by complainants, how long he occupied, and how much rent he paid Mr. Marshall, witness said, that he and J. A. Davenport took possession about 15th of January, 1853, and paid him the rent up to the 1st of April last, (1854), and $1.50 on the present year at $6 per month. Mr. Nichols, the present tenant, took possession about 20th of December, 1854, at $6 per month.

Cross-examined by defendants.

Witness deposed, that about an hour or an hour and a half, just before the time of his testifying in the court-house, James Marshall told him he rented the house at $4 per month the first year, and at $6 per month since then.   To the best of his knowledge Marshall was to have possession of the store for the work he did on it; his understanding was, that Marshall was to have it for three years and three months, from the time J. A. Davenport and witness rented it.   The removal of the partition greatly added to the comfort, value and convenience of the house, for the purposes for which it was built.   Witness and J. A. Davenport, at a cost of about $30 or $35, put a shed room or wareroom to the building, which adds to it as a storehouse ; they also put two window shutters, and fitted up windows, worth about $3.

Re-examined by complainants.

Witness deposed, that it was at the time he and James A. Davenport rented from Marshall, that he told them he was to have the house for three years and three months from time of renting to them, for the work and labor he did thereon. Thinks that neither complainants, nor any agent for them, was present at that conversation.

Defendants' depositions.

*B. F. Marshall,* a witness for defendants, testified, that he is acquainted with the parties to the suit.   Knows of defendant

Marshall and A. F. Haynie deceased, doing business as part-
ners, from October, 1848, to May, 1850, when they dissolved.
Defendant Marshall was to pay A. F. Haynie the amount he
had in the stock, and fifty per cent. on it; defendant was to
keep the stock of goods and books, and Haynie to retire from
business. They occupied the lot in dispute, a part of which
was formerly occupied by W. D. Haynie as a residence.
When they dissolved, Dr. Haynie called witness to witness
the contract as to the house, which is, defendant Marshall
was to have it at half rent until the rent amounted to what
defendant had expended in building the house; the rent
agreed on was $4 a month, being $2 defendant Marshall was
to pay. The house was in possession of defendant and his
tenants from time of dissolution hitherto. Thinks at time of
dissolution it was reasonably worth $4 per month; witness
and Dr. Davenport rented it since then at that rent. Being
asked, at whose instance it was that defendant Marshall con-
tinued in possession of the house, witness said, that there was
some contention between A. F. Haynie and defendant. De-
fendant wanted A. F. Haynie to take the amount he expended
on the house out of what he would owe A. F. Haynie on dis-
solution. Haynie insisted defendant Marshall should keep it
until the rent amounted to what he had expended thereon, as
witness before stated.

*James Chance*, a witness for defendants, testified, that he
knows the parties, and the storehouse in question. He
furnished flooring plank for same, $8 worth and upwards.
Defendant Marshall paid him.

*William Chance*, a witness for defendants, testified, that he
knew A. F. Haynie and defendant Marshall. In spring of
1848 he furnished stone for a house, and defendant Marshall
paid him $1.25 for it.

Cross-examined by complainants.

Don't know for what house he furnished the rock. Don't
recollect the year or time of the year.

*James Hawkins*, a witness for defendants, testified, that he
knows defendants Marshall and A. F. Haynie, and knows the
premises in question. Made two window-shutters therefor,

and furnished the lumber, and got $4 for it from defendant Marshall. Knows that A. F. Brown furnished lumber, made shelves, three doors, cased and hung them, and furnished plank and made counter-table, all of which amounted to $62, and that defendant Marshall paid Brown for same.

Cross-examined by complainants.

Don't know whether Haynie and Marshall were partners then. Defendant Marshall paid Brown in accounts and other indebtedness; his own bill was paid by debt he owed Marshall. Was present part of the time Brown and Marshall were settling; some few days after, Brown told him they had settled; can't recollect exactly how it was. Thinks the work was done in 1848.

Re-examined by defendants.

Knows defendant Marshall, at time of Brown doing said work, had an execution against Brown; don't know the amount. Witness was to have pay for his work, and Marshall settled his account; there was not enough left to settle it, and witness did not get it; had to look to Brown for it.

Re-cross-examined by complainants.

Knows no more in that matter but what Brown or Marshall told him, only in what he was present at when they were settling.

*Henderson Hensley*, a witness for defendants, testified, that he knew A. F. Haynie and defendant Marshall, and knows the premises. Brought a load of lime, part of which he left at that house, for which defendant Marshall paid him $5 or something over.

Cross-examined by complainants.

Don't know who occupied then. Mr. Marshall ordered the lime, and he hauled it there; thinks it was the understanding that Marshall and Haynie were building the house together. Can't give the date; the workmen were at work on it then. Can't say what was done with the lime; did not stay; thinks they were preparing to use it. Mr. Marshall paid him in cash.

*Edward Young*, a witness for defendants, testified, that he knew the parties and the premises; he lathed and plastered the house. Mr. Marshall paid him therefor, $36. Knows

the lime furnished by Mr. Hensley was used on the house. Mr. Marshall and his sons furnished the sand, and waited on witness while plastering. Thinks the sand, making mortar, and waiting on witness, worth $15. Mr. Marshall furnished nails for lathing, worth $3, and for shingling, worth $2. Mr. Evans hauled some boards; was there when Mr. Chance hauled the rock, which was used on the house. Thinks Mr. Haynie was in St. Louis sick.

Cross-examined by complainants.

Does not know whether Haynie and Marshall were partners then. Thinks Mr. Marshall had the nails on hand. It was the house occupied by B. F. Marshall and Davenport. When the house was finished, there were two rooms lathed and plastered, the smaller one eighteen by twenty feet. There was a lathed and plastered partition between them; don't know the size of the other room; it was same width, not less than twenty-four feet long, and about ten or eleven feet story. In the inner part of the building Mr. Marshall said he was going to move his drugs. The other room was shelved off for goods; supposed they were going to put goods there. Supposed the house belonged to Mr. Marshall; he told witness it did. Was not in the house since Davenports, were in it. The work was done in spring of 1848. It was finished for occupancy about June, 1858.

Re-examined by defendants.

Mr. Marshall boarded witness at Mr. Easley's while the work was being done; can't say what it was worth.

*Obadiah Evans*, a witness for defendants, testified, that he knows the parties, purchased materials for the building connected with the storehouse in question, three feet covering boards, worth $2.81; thinks he settled with Abner Haynie.

Cross-examined by complainants.

Settled with Abner Haynie, he being present when witness furnished boards. The reason he settled with Haynie was that he and Marshall were partners then. Did not recollect the year.

*Abraham Wimberly*, a witness for defendants, testified, that he is acquainted with parties and the storehouse in question;

Davenport et al. *v.* Haynie et al.

he furnished lathing, some 40,000 at $2.50 per thousand, and James Marshall paid him for them.

*James Adams,* a witness for defendants, testified, that he knows the parties and premises. Witness, with his father and brother, worked on framing, weather boarding, sheeting, flooring and shingling the house, and patching old house which was covered anew; it all cost $75; don't know who paid for it. Witness and his brother were working for their father; thinks his father owed defendant Marshall individually at that time.

Cross-examined by complainants.

Understood from his father it was Marshall's house. The old house was twenty by eighteen feet, one story; the new house was twenty-four by eighteen feet, ten feet high. There were two rooms when it was finished, divided by the gable end of the old house, which formed the partition; when finished, it was a good and substantial building.

Re-examined by defendants.

His father told him that Mr. Marshall employed him, and was to pay him.

*James Young,* a witness for defendants, testified: knows the parties and the premises. He furnished shingles, and sills, joist, studding, sleepers and rafters, worth $79, which Mr. Marshall paid him.

Cross-examined by complainants.

Mr. Marshall paid him $18 in note on witness' brother, one horse, some money, and balance in witness' indebtedness.

*William G. McKinney,* a witness for defendants, testified, that he knows the parties and premises. He and Mr. Fulton made a counter, and a panel door. Charged $10 for counter, $6 for panel door; Mr. Marshall employed and paid them; witness furnished lumber for the top of counter, worth $3, which Mr. Marshall paid in lumber in return. Thinks the removal of the partition a benefit to the house as a storeroom. It was painted by Marshall, who furnished oil, paint, and brush; it was worth $12 or $15.

Cross-examined by complainants.

The counter was nailed to the floor; it was in the old

room; there was a partition there then; the new room was used for drugs and queensware; a small portion of the counter has been turned, and put in one end of the room. No shed attached then; there is now. If the shed were removed and gable end taken out, as it is now, it would not add to the stability and firmness of the building.

Re-examined by defendants.

The shed building has not injured—it adds to the convenience of the store.

Re-cross-examined by complainants.

The building is forty-four feet long, eighteen feet wide, and ten feet high; the removal of gable end has not injured or weakened the building.

*Robert D. Easley*, a witness for defendants, testified: knows the parties. Mr. Marshall paid him, for board of Edward Young two or three weeks, while working on house, about $6.

Cross-examined by complainants.

Knows the premises; it was finished in spring of 1848; the room built made two rooms in the house; thinks the frame about forty feet long, eighteen feet wide; does not think removal of partition injured the house. Understood from Haynie and Marshall that they were preparing the house for a partnership business.

Re-examined by defendants.

Thinks Haynie and Marshall were not partners before completion of the house.

*Mark Tully*, a witness for defendants, testified: knows the parties; witness and his son sawed some scantling and sheeting at their mill, worth $15 to $20, which Marshall paid.

Cross-examined by complainants.

His son James was paid; was not present.

Re-examined by defendants.

It was paid to his son, witness and he being partners.

*James A. Marshall*, a witness for defendants, testified, that he knows the parties; knows Nathan Adams worked on house, and Marshall paid him; he was in debt to Marshall; the balance, $15, he was to take in the store. Defendant

Marshall furnished locks, worth $3; glass, sash, and putty, worth $4; paints and oil, $8.   O. Evans furnished boards.

Cross-examined by complainants.

Saw his father and Adams settling, hearing good part of their settlement.

September 23, 1854, complainants filed amended and supplemental bill, which stated,

That at May term, 1853, of Marion Circuit Court, complainants filed their original bill; its object was to get possession and account of rents of a town lot in Salem. Prays that said original bill, as far as material, be part of this supplemental bill. That at said May term, answers and replications thereto were filed, and testimony taken, on both sides. That by reason of allegations in Marshall's answer, and the grossly fraudulent and litigious defense therein, and the collusion of said Marshall and the Davenports, and one R. M. Nichols, since filing the answers, the complainants are compelled to amend the bill and file supplemental bill to show true state of the case.

That said Marshall and A. F. Haynie, in 1849, and previously, were partners, and built a storehouse in Salem by adding a room and repairing the old house, the lot being Haynie's; part of the expense paid by Haynie, and part by Marshall. Haynie in bad health, and he finding Marshall was acting dishonestly, dissolved the partnership. Marshall gave his note to Haynie for amount of stock and fifty per cent. thereon, and Haynie agreed Marshall should use the store for a short time until reimbursed his outlay; the store then rented for $4 per month. Marshall's outlay inconsiderable; not ascertained, but did not exceed $261.08. That after said dissolution, Marshall fraudulently tried to claim one-half of said store and lot, and filed his bill in chancery in Marion Circuit Court, May term, 1851, Haynie then being an invalid, unable to do business. Marshall, by filing said bill, sought to take advantage of Haynie's ill health by a default. That Haynie recovered, and filed his answer at May term, 1851, of said court, sworn to, and complete answer thereto. That Marshall was bound to reply in four days, or

except. He did neither. Complainants contend that said bill and answer are conclusive on the right of the parties as far as admitted or denied. That bill and answer annexed to this supplemental bill.

That Marshall, in said bill, not only claimed one-half the store, but the $261.08, his outlay thereon, and that he should retain the store until repaid his outlay, from May, 1851, at the rate of $4 per month. That said answer fully explained all, and showed Marshall had no right to possession, and his attempt in another place to claim possession is unconscientious and fraudulent.

That said Haynie, husband and father of complainants, respectively, died, July, 1851, in Kentucky; that at September term following, he suffered the cause to abate, to gain advantage, knowing he could not disprove said answer—and was barred thereby of clearing title—yet if he succeeded in a decree *pro confesso*, he, though since Haynie's death has set up a different case from his bill, would in case of such decree have tried to prove his former case, as he now contradicts that case—had said bill not been answered.

That after said dissolution said storehouse and lot were occupied by B. F. Marshall, son of said Marshall, at $4 per month; that during occupancy of said B. F. Marshall said Haynie sent him word he must pay rent $5 per month, as rents in Salem were rising; all of which said James Marshall knew, yet he never signified dissent or set up any claim to same, knowing he was reimbursed his outlay.

Charges the alleged contract by Haynie and Marshall for the latter to hold said house, was only a parol agreement, and void by the statute of frauds and the statute of leases.

Insists Marshall is bound to account for rent of the store at $4 per month for first year, and $6 per month for remaining time he has held same, and has received that amount. That Marshall, if he has any claim, should look to Haynie's personal estate. That the alleged contract is void, as against the statute of frauds; and that he has held the store against complainants' consent, and is bound to account for the rents and pay them over to complainants.

That complainants are not only kept three years and a half out of their possession, but said Marshall and James Davenport threaten to pull down part of the building, to complainants' injury and disinheritance of said lot.

That at last term of Marion Circuit Court, complainants notified said James A. and John V. Davenport not to pay any more rent to Marshall; that they, to avoid same, have changed the possession and rented to R. M. Nichols, who, with one Rufus P. McElwain, now occupy—all which continue said tortious possession; in which the Davenports colluded with Marshall.

Charges waste against Davenports in removing a partition wall without license, and thereby forfeited right to occupy as tenants.

Prayer that Houts, Marshall, Davenports, Nichols and McElwain, be made defendants to this amended and supplemental bill, and answer same; for decree that Houts, against whom no costs are asked, may convey said store and lot to complainants; for possession, and that their title be quieted; for injunction and receiver; that further litigation be ended; and for perpetual injunction and writ of summons.

The bill filed May, 1851, by James Marshall, referred to in said supplemental bill and annexed thereto, states,

That in April, 1847, complainant Marshall, and Abner F. Haynie, a physician, agreed to become partners as merchants, druggists and apothecary, on equal footing as to loss and gain, Haynie to account for his medical fees as partnership assets. The house in which they traded, and title, were Haynie's, but Marshall having contributed $261.08 to the repair of the house, it was agreed said house and lot should be partnership stock. That they traded as A. F. Haynie & Co., under terms of said agreement, until May, 1850, when they dissolved by mutual consent on these terms: Haynie to have proceeds of his practice, Marshall to have the stock in trade on hand, paying Haynie the amount contributed by him as stock in trade, and fifty per cent. thereon, deducting therefrom Haynie's account for goods, drugs and medicines taken by him, and all sums paid by Marshall on account of Haynie's debt. That afterwards, pursuant to these terms, and on a partial settle-

ment, said Marshall gave Haynie his note for over $1,100, precise sum unknown, payable March, 1851, on which certain sums were to be credited, such as Haynie's account with the firm, and sums paid by Marshall at Haynie's request for his debts—the amounts were then unknown to complainant, and he believes also unknown then to said Haynie, but when ascertained were to be credited to Marshall on said note.

That at and before dissolution aforesaid, and execution of said note, Marshall paid for Haynie as follows : To R. D. Easley, for Haynie's board and lodging, $55; stage fare, $10; a Wooster Bank bill paid in by Haynie, worthless, $10 ; medicine to Haynie, and furniture for apothecary shop, $30; judgment held by B. Bond against Haynie, and a lien on his real estate, $125; insurance on store, $34.25 ; two suits of clothes, amount not known ;—all which items were not taken into account at time of said dissolution and making said note. Complainant Marshall charges he is entitled, under terms of dissolution, to fifty per cent. additional on all sums that should have been deducted at time of settlement; all which Haynie knew, and has the vouchers for in his possession. That since dissolution, and during 1850, Haynie bought goods of complainant, to amount of $138.79. That afterwards, in March, 1851, complainant paid Haynie $700, and at the same time gave an order on J. T. Dwyer for $100, which was paid, making in all $938.79, paid since giving said note. That at the time of dissolution it was agreed that Marshall was to retain the storehouse at $4 per month, until said $261.08 outlay on said store was repaid. That said $938.79 paid since note was given, and $381.37, amount paid previous to dissolution and not accounted for, makes $1,320.16, an amount exceeding the sum due by complainant to said Haynie. That complainant has often applied to Haynie to account and settle, and give up said note, and pay the balance, as in equity he ought. Haynie refuses.

Prayer for answer, and specially interrogates as to each item ; for partnership account; for account of moneys paid since dissolution ; for decree for amount to be found due, and that defendant Haynie produce the vouchers and deliver up said note ; for further relief ; and for summons.

The answer referred to in supplemental bill and annexed thereto, and filed May term, 1851, states,

That the time and terms of partnership are correctly stated. Denies complainant Marshall was to acquire any interest in the storehouse, or that it was partnership stock. That if such contract be shown it is parol, and void by the statute of frauds, which is pleaded. Time of dissolution correct. States the terms of dissolution to be as follows : Defendant Haynie was a practicing physician, and the proceeds of his practice were joint stock, but on dissolution it was agreed Haynie should retain all these proceeds, as well those paid as those unpaid, and all sums paid in to the firm for such practice Marshall was to refund, with fifty per cent. thereon ; further it was agreed, that Haynie's store account with the firm be deducted from the assets thereof, also all moneys before that drawn out by said Haynie ; a balance was then struck, which, with fifty per cent. additional, was to be paid by Marshall to Haynie, subject to his instructions. That Haynie's account for drugs was not to be charged. That on these terms settlement was had, and balance adjusted, for which Marshall gave his note for $1,184.40, in full of all that was supposed to be due.

That the $55 charged as paid Easley is incorrect, no such payments having been made. There were mutual debts between Easley and defendant Haynie, not yet settled. That any debt to Easley was individual and not partnership ; and if paid, was done without Haynie's authority. Charge of $10 stage fare incorrect; willing to pay $3 ; it was a partnership charge and adjusted. $10 Wooster Bank bill incorrect; it was received by Marshall for the firm and he should pay it; is willing to deal equitably. That $30 charged for furniture of apothecary shop is incorrect; it was not worth $8, which last sum even, under their agreement, is an improper charge. The $125 paid B. Bond, if ever paid, was paid on a judgment note of Haynie, and barred by limitation ; and if paid, was the payment of a debt of a third person without authority, and not a partnership debt.

That by the terms of the dissolution, Marshall, after complying with the terms before stated, was to have the entire

stock on hand, and to pay all the firm debts. The charge for insurance was a firm debt, and to be paid by said Marshall. Positively denies the charge for the two suits of clothes. That the $700 cash, and the $100 from J. T. Dwyer, were paid and credited on said note. That the statement of Marshall's outlay and agreement are not correct. That said outlay was not then ascertained; no time fixed for payment. That Marshall continued to occupy the store, at $4 per month, and has occupied and now occupies. Said rent should be deducted from said charge for outlay, when the amount paid is proved. That Haynie holds an account against Marshall, besides said note, for $135.75; has offered to adjust their matters, but could not effect it. · Denies that anything as to the partnership is open and unsettled, so as to require the aid of a court of chancery. That for all mutual claims the remedy at law is complete. That the charge of $138.79 for store account against Haynie, is not partnership, and he (defendant Haynie) has a right to apply it on any debt of said Marshall; that defendant Haynie is always ready to adjust it in final settlement.

Order of September term, 1855, appointing Silas L. Bryan, receiver, etc., and granting injunction as prayed.

Injunction, dated November 7th, 1855, against defendants Marshall, Davenports, Nichols and McEwain, from renting or underletting the premises, and from committing waste.

Answer of James Marshall, of May term, 1856, to amended and supplemental bill, states,

That he admits filing of original bill at May term, 1853, but with an additional object not stated in amended bill, viz.: to get title and possession of said lot, and an account. That defendant answered said original bill fully, and refers to same. Unqualifiedly denies that his defense in said answer was grossly fraudulent and litigious. Denies collusion charged with Davenport; and that same is false. Denies that he claimed title to lot, but only a possessory right under contract with A. F. Haynie. That ever since he filed said bill, in 1853, he has been ready and pressing a hearing, but complainants are postponing same, pretending surprise by defend-

ant's answer, though complainants well knew, before filing said original bill, the nature of defendant's claim, viz., that he claimed the use of said store at a given rent, until reimbursed his outlay in said house.

That sometime in 1847, defendant and Haynie became partners in sale of goods and drugs. That Haynie was to contribute $1,500, but never paid more than $400. That the room then occupied was too small. That they agreed to build on lot which Haynie said was his. That Haynie went to St. Louis at that time. That defendant went on and did build, etc, Haynie paying only a small amount. That defendant superintended the work, and paid, individually, $227.04. That at that time the lot belonged to W. D. Haynie, and not to A. F. Haynie. That it was mortgaged, foreclosed and sold by Houts, commissioner. That defendant bid it off for A. F. Haynie. That defendant bought large stocks of goods and paid for them. Haynie paid nothing more than said $400, and gave but little personal atttention. Defendant was obliged to borrow money on personal credit, and began to make bills for goods in his own name, said Haynie promising to pay his share of capital.

That finally, in spring of 1849, they agreed that Haynie should go out, defendant paying him all he had paid in by cash or medical practice, and fifty per cent. Defendant previously offered to sell to Haynie on same terms, and fifty per cent. There was then a partial settlement, and defendant gave his note for $1,000, or $1,100, (sum forgotten); that was all that was settled; the memoranda taken down thereof Haynie took. On their settling, the storehouse was hard to settle—neither wanted it; it was finally agreed that defendant should keep it at $4 per month rent, one-half to Haynie, and one-half to defendant, until his outlay was paid; then defendant did not want it for more then a year, and would then rent it out. The agreement was verbal, but was well understood and witnessed. Defendant submits that the statute of frauds cannot affect said agreement because it was wholly executed by defendant by his payment in advance of the rent agreed on, and his having possession and continuing in possession person-

ally or by his sub-tenants, and the contract being made in good faith.

Denies that he ever claimed said property as his own, or fraudulently filed his bill in 1854. That said Haynie requested defendant to file it to settle their matters, and sent a note to Houts, his counsel, to bring suit for that purpose. Admits Haynie answered at close of term, and died before the next term. Denies he suffered the cause to abate; that he intended in good faith to prosecute it, and prove his bill. But the court (Judge S. S. Marshall) ruled it must abate by Haynie's death, as it was a cause that could not have been originally brought against the legal representative of Haynie, deceased, being for discovery as well as relief. That he furnished his solicitors with items of outlay to amount of $261.09, but has since then found items, promiscuously charged in the books, which aggregate the sum of $337.04, and which he submits he has proven almost entirely by depositions in this cause. Denies he has set up a different case since death of Haynie. Knows of nothing of alleged notice to B. F. Marshall to pay $5 per month; does not believe it was given. Did sub-let to Davenport, and his son B. F. Marshall; and that McElwain and Nichols now occupy it. Denies waste. Admits repairs, and that the house can be given up in same condition as received (ordinary wear and tear excepted.) Submits that he is not bound or concluded by his own bill or by Haynie's answer, etc.

General replication to said answer filed.

Master's report of testimony for complainants.

*George W. Haynie* testified, he knew the partners in spring of 1851; while A. F. Haynie was sick, he directed witness to notify B. F. Marshall, the tenant, he must pay $5 per month rent. B. F. Marshall made no reply. Thinks $60 a year a fair rent for 1851 and 1852. Thinks it would rent for $75 a year for 1853, 1854 and 1855, and up to present time worth $125 a year. For sometime before A. F. Haynie's death, he and James Marshall were partners, doing a credit business. Taking down the partition no injury, but more rent could be got if rented separately. When the addition was

built, labor and material were low ; thinks it could have been done for $150 ; it was an additional room. A. F. Haynie was husband of complainant, Martha D. Haynie.

*Samuel Hull*, for complainants, testified : he knows the parties ; that previously to the death of A. F. Haynie, he and James Marshall were partners, in a credit business. The addition when built could have been done for $250, labor and material being low. Taking down the partition no injury to renting. From 1851 to 1852, it would have rented for $60 a year; from 1852 to 1854, worth $75 a year ; from 1854 to present time, worth at least from $10 to $12 per month.

Final decree by O' MELVENY, Judge, that Thomas F. Houts convey the premises to the complainants, to hold in equal parts as tenants in common, and that the deed heretofore made by Houts to A. F. Haynie since his death, be canceled; that complainants recover of the defendants James Marshall, James A. and John V. Davenport, the sum of $401.06, according to report of master. That execution issue against them, unless paid in thirty days from this date (17th March, 1858) ; that defendants Marshall and Davenports forthwith deliver up possession of the premises. Order perpetually enjoined them from disturbing complainants' possession, and that this decree be entered as of March term, 1858.

P. P. HAMILTON, for Plaintiffs in Error.

In order to do full justice, and avoid a multiplicity of suits, all persons must be made parties who have any substantial interest in the subject-matter of the controversy, and whose rights are to be materially affected by the bill. *Bruff* v. *Leder*, 5 Gilm. 210 ; *Spear* v. *Campbell*, 4 Scam. 424 ; *Montgomery* v. *Brown*, 2 Gilm. 581.

A decree can only be reversed as to some of the defendants to a bill in chancery, and affirmed as to others, where there are several matters in controversy, and different adjudications necessary. *Montgomery* v. *Brown*, 2 Gilm. 581.

Advantage may be taken of a want of proper parties, by demurrer, at hearing, rehearing, or on appeal. *Martin* v. *Dryden*, 1 Gilm. 187.

An objection to a bill in equity for want of proper parties, when made in the appellate court for the first time, comes too late, unless parties are omitted whose rights are so connected with the subject-matter of the suit, that a final decision thereof cannot be made without materially affecting their interests. *Scott* v. *Bennett*, 1 Gilm. 646.

As to parties:

A person is a necessary party to a suit when no decree in relation to the subject-matter in litigation can be made until he is properly before the court as a party, or where the defendants in a suit have such an interest in having such person before the court as would enable them to make the objection if he were not a party. *Bailey* v. *Inglee*, 2 Paige, 278.

All parties legally or beneficially interested in the subject of a suit, must be made parties. *Crocker* v. *Higgins*, 7 Conn. R. 342.

That interest must be a right in the subject of controversy. Ibid.

All parties interested must be parties to a bill for relief. *Trescott* v. *Smith*, 1 McCord, 301.

Parties and privies only are bound by a decree. Privies are those of blood, contract, or estate. *Allen* v. *Hall*, 1 A. K. Marshall, 527.

As to amendment and separation of decree:

Where there are a plurality of defendants and the subject in controversy is divisible, there may be a decree against all for a part; or, if they are disjunctively or separately liable, there may be a decree against each. *Lingson* v. *Henderson*, 1 Bland, 256.

Amendments are never too late to add proper parties while the court has control of the cause. *Parberry* v. *Goram*, 3 Bibb, 108.

If the case be once properly before the court, it will do all it can to settle the rights of all parties in the matter in controversy justly and equitably by one decree. *Couse* v. *Boyles*, 3 Penn. R 212.

A final decree in equity, or an interlocutory decree, which in a great measure decides the merits of a case, cannot be

pronounced until all the parties to the suit, and all the parties in interest, are before the court. *Conn* v. *Penn*, 5 Wheat, 424.

A decree in chancery is not binding on a person not a party to the suit. *Brown* v. *Wynkoop*, 2 Blackf. 230 ; *Cauley* v. *Ridgeway*, Halst. Dig. 175.

If it appears on the face of the record that the proper parties to the suit are wanting, the decree will be reversed, unless the objection was expressly relinquished in the court below. *Shepard, Executor*, v. *Starke*, 3 Mumf. 27.

WALKER, J. The decree in this case is not questioned, in so far as it requires the master to convey the property in controversy to defendants in error. It is, however, insisted that it is erroneous, in requiring the plaintiffs in error to pay rents to defendants in error, until they are reimbursed for improvements made on the property. It is admitted, that when Abner F. Haynie and James Marshall entered into partnership, that the property belonged to the former; that alterations and additions were made, so as to render it more convenient for their business, and that the property was occupied by them during the continuance of the partnership. Upon a dissolution it was agreed, that Marshall should repay Haynie his capital, with fifty per cent. advance.

It is insisted by Marshall, that he was to retain the property until his advances for repairs were reimbursed by one-half the rents. One witness so testified. That Dr. Haynie should have made such an agreement, is, at least, highly improbable. The property was his own, he was to pay for the improvement, and no reason is perceived why he should make a gratuity of such a sum to another, having no claims upon him. It seems much more reasonable to suppose the witness to have been mistaken, or that he has forgotten what was said by the parties, than to suppose that such a sum would have been given without any apparent reason, or without some equivalent. Again, another witness testifies that Marshall admitted to him that he was to pay four dollars a month during the first year, and six dollars per month afterwards. Nor does it seem that he limited or in any man-

ner qualified this admission. If only half of that sum was to have been applied on the repairs, it is strange that he failed to state that fact at the time. We think the evidence fails to show that the rent was to be applied upon the repairs. That such was the arrangement for the use of the building during the continuance of the partnership, is probably true. And it is probably true, that all the matters relating to rents and repairs were adjusted up to the time of the dissolution.

But the decree is manifestly erroneous, in requiring all of the defendants to pay the amount of rents ascertained to be due to defendants in error. They did not occupy the property jointly, but severally, at different periods; and each plaintiff in error could only be liable for the rents which accrued whilst he occupied the property, except James Marshall, from whom the others leased. He was undoubtedly liable for all the rents, during its occupancy after Dr. Haynie's death, and each of the others for all rents which accrued after they were notified not to pay it to Marshall. There seems to be no evidence to hold them jointly liable for all the rents.

For these reasons the decree of the court below must be reversed, and the cause remanded.

*Judgment reversed.*